IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TINA ANNE COMBS                                                                                  PLAINTIFF

        v.        Civil No. 2:14-cv-2250-MEF

CAROLYN W. COLVIN, Commissioner
Social Security Administration                                                              DEFENDANT

**<u>MEMORANDUM OPINION</u>**

      Plaintiff, Tina Combs, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.**    **<u>Procedural Background</u>:**

      Plaintiff filed her original applications for DIB and SSI on December 3, 2009, alleging a disability onset date of August 15, 2009, due to bulging and thinning disks. Tr. 96-107, 139, 156-157, 172-173, 189, 197. The Commissioner denied her applications initially and on reconsideration. Tr. 43-54. An Administrative Law Judge ("ALJ") held an administrative hearing on October 7, 2010, and entered an unfavorable decision on December 20, 2010. Tr. 8-17, 22-38, 64-65. On August 8, 2013, this Court remanded the case for further administrative proceedings. Tr. 421-428.

      The ALJ held a supplemental administrative hearing on January 24, 2014. Tr. 388-420. Plaintiff was present and represented by counsel. At this time, she was 39 years old with

a limited education and specialized work training as certified nursing assistant ("CNA"). Tr. 15, 25, 139, 144, 391. She had no past relevant work experience. Tr. 15, 28-29, 140, 146-153, 395.

On August 7, 2014, the ALJ found that Plaintiff's lumbar osteoarthritis, morbid obesity, chronic obstructive pulmonary disease ("COPD"), and situational depression were severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 373-375. After partially discrediting Plaintiff's subjective complaints, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary unskilled work involving occasional climbing, balancing, stooping, kneeling crouching, and crawling and no concentrated exposure to pulmonary irritants such as odors, dusts, and gases. Tr. 375. With the assistance of a vocational expert, the ALJ found Plaintiff could perform work as a prep clerk or ordinance inspector/checker. Tr. 380.

Subsequently, Plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF Nos. 9, 11.

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary.

**II.    Applicable Law:**

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th

Cir. 2011). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A Plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to

perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. Discussion:

Of particular concern to the undersigned is the ALJ's RFC determination. RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545, 416.945. A disability claimant has the burden of establishing his or her RFC. *Vossen v. Astrue,* 612 F. 3d 1011, 1016 (8th Cir. 2010). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Miller v. Colvin*, 784 F.3d 472, 479 (8th Cir. 2015) (citing *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

The Plaintiff suffers from an impairment to her lower back complicated by morbid obesity. Records from the Good Samaritan Clinic dating back to February 2009, reveal consistent complaints of pain radiating into her right hip and down her leg. In October of 2009,

an MRI of her lumbar spine revealed disk desiccation at the L5-S1 level with a right lateral recess disk herniation that contacted and deviated the right Sl nerve root as well as right foraminal stenosis. Tr. 217, 252.

Between February 2009 and February 2010, physical examinations revealed tenderness to palpation in the lower back. Tr. 246-253. Her treatment included prescriptions for nonsteroidal anti-inflammatory drugs and muscle relaxers. The doctor also noted that a charity application was completed in an attempt to qualify Plaintiff for services through the University of Arkansas Medical School. However, Plaintiff testified that she was unable to receive said services due to the absence of a vacancy within the program. Tr. 30-31, 395-396.

On January 25, 2010, Plaintiff underwent a general physical examination with Dr. C.R. Magness. Tr. 218-225. An examination revealed an abnormal gait due to her back and right leg, a greatly decreased range of motion in both ankles and her lumbar spine, a poor ability to stand and walk without an assistive device, and an inability to walk on heel and toes and arise from a squatting position. Dr. Magness diagnosed Plaintiff with DDD at the L4-5 level with right lower radiculopathy, obesity, COPD, and situational depression/marginal IQ. Tr. 224. He then assessed her with severe limitations in the ability to walk, sit, carry, and lift and moderate to severe limitations in the ability to stand. Tr. 224.

Between June 2010 and January 2011, Plaintiff was treated in the emergency room on at least four occasions due to back pain. Tr. 298-367. In June, Plaintiff injured her lower back. An exam revealed severe tenderness to palpation of the sacrum. X-rays were negative, and she received a Demerol and Phenergan injection and prescriptions for Percocet and Lorazepam for a diagnosis of a sacrum contusion. In August, she returned with complaints of lower back

5

pain and difficulty voiding. Plaintiff was diagnosed with acute pyelonephritis and a urinary tract infection and prescribed antibiotics and Hydrocodone.

In January 2011, Plaintiff slipped on icy steps and fell. Tr. 352-367. A physical exam revealed tenderness and pain to palpation of the left lumbosacral paraspinous and midline. Records indicate that she had received an injection for back pain in the emergency room the previous evening. At this time, she rated her pain as an 8 on a 10-point scale and indicated that it was aggravated by certain positions, twisting, and bending. She was given injections of Nubain, Phenergan, and Norflex and prescriptions for Hydrocodone, Prednisone, and Ibuprofen.

In February 2011, the Plaintiff returned to the Good Samaritan Clinic complaining of right back, hip, and leg pain. Tr. 576. She indicated that sitting exacerbated her pain. An exam revealed tenderness over the L5 level and both legs. The doctor diagnosed an L5-S1 level disk herniation with nerve root radiculopathy and prescribed Mobic, Flexeril, and Neurontin. He also noted that no one would perform surgery on her due to her lack of insurance.

On April 18, 2011, her back pain persisted. Tr. 575. An exam revealed continued lumbar radiculopathy. In August, she reported a deterioration in her condition and worsening pain. Tr. 574. The doctor increased her Neurontin dosage, noting that she was awaiting approval of her disability application so she could get her back "fixed."

On December 14, 2011, the Plaintiff requested and received a refill of Flexeril. Tr. 573. In May, she reported continued pain and numbness down her right leg. Tr. 572. An exam revealed decreased sensation in the right leg, although she was able to walk without difficulty. Again, the doctor increased her Neurontin dosage.

In October 2012, the Plaintiff reported a recent fall that had resulted in a trip to the emergency room. Tr. 571. X-rays were reportedly negative. However, the paresthesia in her right leg continued, she had pain radiating up her spine, and the right side of her pelvis and right buttock were tender to palpation. The doctor diagnosed a back contusion secondary to a fall and prescribed Cyclobenzaprine, gentle stretching exercises, and Aspercreme.

On March 14, 2013, the Plaintiff returned to the Good Samaritan Clinic with lower back pain radiating into her right leg. Tr. 570. Although somewhat improved, the numbness in her right leg persisted. The doctor diagnosed chronic lower back pain with known disk disease and restarted her on Neurontin.

In September 2013, the Plaintiff reported a recent bout with pneumonia that had resulted in persistent rib pain. Tr. 569. Inspiration was painful and her back pain continued. Due to the cost of the Neurontin, the doctor prescribed Elavil instead. He also prescribed Flexeril as a "back up."

By December, the Plaintiff reported some improvement in her back pain. Tr. 586. However, she was not pain free and requested an increase in her Elavil dosage. The doctor also noted chest wall pain with coughing, advising her to return for x-rays if this did not resolve in four weeks.

On March 26, 2014, Dr. Michael Westbrook conducted a general physical exam. Tr. 589-593. He noted decreased sensation in her right foot, difficulty standing and walking without an assistive device, an inability to walk on heel and toes and squat and arise from a squatting position, and a 30% deficit in the grip strength in her right hand. Although an extremely limited RFC assessment was completed by his nurse, Dr. Westbrook indicated it was based solely on the Plaintiff's subjective complaints. Tr. 400, 594-599. Further, he opined

7

that the Plaintiff should not perform heavy lifting, repetitive bending, pushing, or pulling and should not lift or carry over 20 pounds.  He also offered to complete a revised RFC assessment.

In April, 2014, at the ALJ's request, Dr. Westbrook completed a revised RFC.  Tr. 601-607.  He indicated that the Plaintiff could occasionally lift up to 50 pounds, sit and stand 45 minutes at one time for total of 3 hours per 8-hour workday, and walk 30 minutes at a time for total of 2 hours.  Further, Dr. Westbrook opined she could frequently reach, handle, finger, feel, push and pull with both hands, and operate foot controls with both feet; occasionally climb stairs and ramps, balance, stoop, bend, crouch, kneel, crawl, or work near moving machinery, humidity and wetness, dust, odors, fumes, and pulmonary irritants, extreme cold, extreme heat, and vibrations; and, never climb ladders or work near unprotected heights.  Contrary to what he stated in his treatment notes, Dr. Westbrook also indicated that the Plaintiff did not need an assistive device for ambulation.

As previously noted, this Court previously remanded this matter for further consideration of the Plaintiff's RFC.  More specifically, the Court directed the ALJ to consider the Plaintiff's need for a sit/stand option.  However, in spite of Dr. Magness' assessment of severe sitting limitations and Dr. Westbrook's opinion that she could sit for no more than three hours total per day, the ALJ found the evidence did not support a sit/stand option.  We disagree.

In 2009, a Disability Determination Services interviewer noted that the Plaintiff had difficulty sitting through the interview.  Tr. 136.  She had to get up and move around.  Moreover, the Plaintiff reported to her doctors that sitting for extended periods exacerbates her pain.  Tr. 576, 250, 361.  At the supplemental hearing, she also testified that she had to change positions frequently, alternating among sitting, standing, and lying down.  Tr. 401.  And, we can find no reported activities that would suggest the Plaintiff is capable of sitting for six hours

per day, as determined by the ALJ.  Accordingly, the undersigned cannot say that substantial evidence supports the ALJ's conclusion the Plaintiff can perform the range of sedentary work identified by the ALJ.  Remand is necessary to allow the ALJ to reconsider the Plaintiff's need for a sit/stand option and to revise his RFC determination.  The ALJ should then pose a hypothetical question to a vocational expert to determine whether the Plaintiff's need for a sit/stand option would prevent her from performing work that exists in significant numbers in the national economy.

**V.     Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 29th day of October, 2015.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE